FOSTER *et al.* v. HOFF *et al.*

No. 2275.  Opinion Filed April 4, 1913.

(131 Pac. 531.)

1. **FRAUDS, STATUTE OF—**Contract for Sale of Land—Modification. Where the purchaser owes the seller money for the purchase of land under a written contract of sale theretofore made, a verbal direction from the seller to the purchaser to pay a part of the purchase price later to become due to third persons in discharge of obligations of the seller is an original undertaking, and does not add to or contradict the contract formerly entered into for the sale of lands, required by the statute to be in writing.

2. **JUDGMENT—**Decree—Equity—Scope of Relief. A court of equity, looking beyond the mere form of things to their substance, has power to decree such relief to the parties as appears just and right, and as best calculated to protect their rights under the situation presented by the record.

(Syllabus by Brewer, C.)

*Error from District Court, Okmulgee County;*
*W. L. Barnum, Judge.*

Action by John E. Harrison, Administrator, against J.
G. Hoff and others, in which John W. Foster and others in-
tervene. From the judgment, Foster and others bring error.
Modified and affirmed.

*Merwine & Newhouse,* for plaintiffs in error.
*Owen & Stone,* for defendants in error.

Opinion by BREWER, C. John Brown, a Creek freed-
man, was allotted as surplus the N. ½ of the N. W. ¼ and
the S. W. ¼ of the N. W. ¼ of section 13, township 13 north,
range 13 east. The S. E. ¼ of the N. W. ¼ of said section
was allotted to him as homestead. Beginning in the year
1904, the allottee made various deeds of conveyance to all or
parts of his allotment to various persons; viz., Bradley Realty
Bank & Trust Company, Scott Yeatman, Continental Land
Company, H. L. Braves, who later conveyed to Elmer E.
Lowe, H. A. Leekley, and P. E. Heckman. These conveyances
all appear to have been made prior to May 1, 1907, on which
date the allottee executed and had recorded in the proper re-
cording district a disaffirmance of all deeds and conveyances
executed prior thereto, on the claim of minority at the time of
execution. This paper asserted that the allottee became of full
age on the date of its filing, May 1, 1907. On May 2, 1907,
John Brown conveyed, for an expressed consideration of $1,500,
the surplus land to Whitlow, Whitfield, Foster, and Taylor;
Whitlow later, in May, having conveyed to Whitfield. On July
27, 1907, Whitfield, Foster and Taylor conveyed by warranty
deed to J. G. Hoff the said surplus allotment. Contemporaneous
with this deed, these parties and Hoff entered into a written
contract, the terms of which will be referred to later. The
matters involved in this appeal revolve around this last-men-
tioned deed and the contemporaneous contract executed between
these parties. In January, 1908, Brown conveyed the homestead

to Hoff, who later quitclaimed it back. In January, 1908, Brown conveyed the surplus allotment to Hoff. In August, 1908, Brown conveyed his homestead to J. L. Peacock. Brown, the allottee, died about October 15, 1908. After the death of the allottee, his father, Sampson Brown, and his mother, Jane Brown, quitclaimed all the allotment to Hoff. On April 12, 1909, Sampson Brown deeded all the land to Morris Mannuel, who on August 6, 1909, mortgaged it to John B. Meserve.

This suit was brought by John E. Harrison, administrator of John Brown's estate, to have all the parties holding deeds to bring same into court for examination to determine who of the deed holders, if any, has title to the lands, and what sum of money may be due the estate of John Brown, and by whom due, and for cancellation of all invalid deeds, as clouds on the title, etc. Foster and Taylor, who had acquired the interest of Whitfield, intervened in the suit of the administrator and set up their claims of title through the deed of May 2, 1907, and their sale to Hoff, and asked that title be quieted and for a lien and foreclosure against Hoff for a balance of purchase price alleged to be due them.

Defendant Hoff filed answer to the plea of intervention and cross-petition of Foster and Taylor, admitting their deeds to him, but denying that they conveyed title, and then set up the contract executed contemporaneously with the deeds, and that under said contract interveners had bound themselves to convey a perfect title in fee simple, subject to the opinion of defendant's attorney. That his attorney had refused to pass the title tendered defendant, and had notified interveners that the various deeds and conveyances executed by the allottee were clouds on the title and would have to be removed by purchase or litigation. That interveners had acted on the opinion of such attorney and had authorized and directed defendant to buy the claims of the various deed holders, where it could be done for a reasonable price, and to charge such sums expended in clearing the title against the balance of the purchase price due from defendant to interveners. Defendant claimed that he had so

paid out sufficient to liquidate the entire balance of purchase price.

J. L. Peacock, being concerned only with the homestead allotment, admitted an indebtedness of $405 and interest on the purchase price of the land, and paid it into court for the benefit of the party found entitled to it. The administrator claimed it, and likewise defendant Hoff claimed it on the ground that, through the various deeds, he should receive the sum under the doctrine of subrogation. On July 9, 1910, the court rendered judgment quieting the title of Peacock in and to the homestead and cancelling all deeds appearing as clouds against his title. No exceptions were noted. This disposition of the funds he had paid into court was postponed until final trial. On July 7, 1910, the cause was by agreement and consent ordered referred to a referee to try the issues of law and fact, and to preserve and return the evidence taken and report his conclusions of both law and fact.

The referee filed his findings of fact, from which we summarize: (1) That John Brown became of full age May 1, 1907, and died about October 15, 1908. That he received the lands as stated in the pleadings as an allotment. (2) That John Brown had executed the various deeds mentioned in the pleadings and had on May 1, 1907, executed and filed a disaffirmance of all of his prior deeds. That on May 2, 1907, he conveyed his surplus allotment to interveners for a consideration of $1,500, of which interveners actually paid $800. That interveners conveyed the surplus allotment to defendant Hoff for consideration of $3,000 July 2, 1907. (3) That, at the time of the execution of the deeds to Hoff by interveners, the parties executed a written contract relating to the sale, as set out in the record, and that the fact that John Brown had made these various prior deeds to other parties was well known, and that the question as to the precise time at which Brown attained his majority was in doubt. That, in consideration of such facts and knowledge, it was agreed between interveners and defendant that these conveyances should be removed as clouds on the title before the

transaction was fully consummated, and defendant Hoff was given authority to buy out the holders of these outstanding deeds and to procure quitclaims or releases from them for such reasonable sums as might be necessary to procure same, but that such authority did not extend to any sums paid the allottee or to his heirs after his death. That, pursuant to such authority, defendant paid out various sums amounting to $1,405. (4) That Hoff furnished the consideration to Brown for a deed dated January 6, 1908, which is included in the $1,405. (5) That defendant Hoff had paid to Brown at various times $2,056, which he considered as payments on both the surplus and homestead, but that interveners had not authorized those payments on their account. (The referee allowed Hoff a credit, however, in the sum of $700 on account of these payments; the same being the balance due Brown by interveners.)

(6). "Your referee further finds that at no time since the execution of the deeds and contract mentioned as having been executed by and between Whitfield, Foster, and Taylor, upon the one hand, and the defendant Hoff on the other, on the 27th day of July, 1907, have either of the parties to that transaction, in any manner, expressed a desire to rescind the same, but all parties have by their acts and conduct indicated a desire to complete and carry out the transaction as a sale of the land."

(7) That, after the sale by interveners to Hoff, possession of part of the land was not given for some time, and on this account Hoff was allowed a credit of $120. These credits, $1,405, $700, and $120, as the referee found left owing by Hoff $1,375 of the original purchase price of $3,600.

The referee concluded as a matter of law; (1) That the deeds from the allottee dated May 2, 1907, conveyed to interveners full title to the surplus allotment. (2) That the deeds from interveners to defendant Hoff conveyed to Hoff fee-simple title. (3) That, as interveners and defendant had by their acts and conduct indicated a desire and the intention to treat the transaction as an absolute sale of the property, defendant is entitled to credit in the accounting for the $700

paid the allottee, and which was due him by interveners, and for the other sums paid interveners and paid others by their authority. (4) That the allottee, Johnnie Brown, having during lifetime been fully paid the consideration agreed to be paid by Foster and Taylor and their associates for said surplus allotment, the plaintiff (administrator) is not entitled to recover herein anything on that account. (5) That it would be inequitable to charge defendant Hoff interest prior to final decree. (6) That Hoff was not entitled to the money paid into court by Peacock on account of the homestead allotment, and that the same should be paid over to plaintiff as administrator of the deceased allottee.

On the facts found and conclusions of law reported, the referee recommended: (1) Decree for plaintiff administrator for the $452.50 proceeds of the homestead, and that the clerk of court be directed to pay same over to him. (2) That judgment be rendered in favor of interveners against defendant Hoff in the sum of $1,375, and that same be declared a lien on the surplus allotment, and providing for sale, etc.

The interveners, plaintiffs in error here, moved to confirm the report of the referee and for judgment according to the recommendations made in his report. The defendant Hoff objected to the rendering of a decree against him for the balance due on the purchase price of the lands mainly for the reason, as urged there and here, that interveners were not entitled to a present judgment, because defendant H. L. Graves and his grantee, Elmer E. Lowe, claimants under allottee's deed of April 9, 1907, had been brought into the case, and their deeds adjudged invalid on summons by publication; no personal service of summons being made on them. And that therefore they had the right under the law to appear, and by proper showing made (section 5617, Comp. Laws 1909) have the case opened, and their rights under their deeds determined, within three years after the final decree. That therefore their deeds were still a menace and cast serious doubts on defendant's title, and that under the agreements made between the parties, as found by the

master, interveners were not entitled to this balance of purchase price, at least until the running of the statute. The court took this view of this matter and dismissed the petition of interveners, from which order they appeal.

We have examined the evidence, which is voluminous and conflicting, and believe the finding of facts, made by the referee, to be supported by ample evidence, and that same should stand with the force and effect that special findings of fact by a jury should have. The recommendation of the referee for a present judgment in favor of interveners against the defendant Hoff, and for a lien and foreclosure thereof, we do not believe to have been sound under the facts found. It will be observed that these parties by their agreements and conduct, as found by the referee, have clothed this transaction with a different aspect than is usually presented where a vendor sues a vendee in possession for purchase money, and outstanding clouds or defects in the title are sought to be set up. The referee found:

"* * * That at no time * * * have either of the parties to that transaction, in any manner, expressed a desire to rescind the same, but all parties have by their acts and conduct indicated a desire to complete and carry out the transaction as a sale of the land."

And referring to the various outstanding deeds, including, of course, the conveyance to H. L. Graves and the one by him to Elmer E. Lowe, the referee further found:

"It was agreed between the parties that said conveyances should be removed as clouds upon the title before the transaction was fully consummated."

Under this finding of fact, the transaction was, under the agreement, not fully consummated, so as to entitle the interveners to the balance of the purchase price by execution in foreclosure on the land, if these deeds under the decree in the case were still clouds upon the title, rendering it unmarketable, subject to doubt and to the danger of being defeated. *Williams v. Doolittle* (Iowa) 88 N. W. 350.

The deed from Brown to Graves was only 23 days prior to the deed held valid in this case; the determining fact was the

date the allottee became of age. Should the grantee of Graves open up the decree in this case adjudging this deed invalid and convince the court that the allottee was in fact of full age on April 9, 1907, the effect would be to validate the Graves title and to destroy defendant's title delivered through interveners.

Appellants, although they appeared at the time to be satisfied with the amount found due them in the accounting by the referee, now complain that error was committed in allowing proof of the verbal agreement and direction of interveners that Hoff buy releases from these deed holders and charge same against the purchase price on the ground that it varied the terms of the contract required to be in writing under the statute of frauds. We do not think this contention sound under the facts presented here. Under the contracts, interveners were under obligation to remove these clouds; they could employ any one to do this; Hoff desired that it be done; interveners must see that it be done before they would be entitled to payment of the purchase price. It was an original undertaking, merely a direction by the creditor to the debtor to pay third persons money in discharge of the creditor's obligations. This did not vary, add to, or contradict the written contract. 20 Cyc. 232, and cases cited; Cent. Dig. vol. 23, Stat. of Frauds, 29; Wood on Stat. of Frauds, p. 407, sec. 222, and cases cited; Smith on the Law of Frauds, 318. The facts of *Bonicamp v. Starbuck,* 25 Okla. 483, 106 Pac. 839, are not similar and that case is not in point.. The evidence was competent.

This brings us to a peculiar situation. The referee made a correct, equitable finding of the facts, on competent evidence, and erred only in recommending a present judgment and lien, because, under the peculiar situation created by the agreement and conduct of the parties, it would neither be lawful nor equitable to make the defendant pay the balance of purchase price until the menace of the Graves deed had been removed. The action of the court was correct in refusing to follow this recommendation for the same reason. Under this somewhat awkward

situation, it is urged with force that we ought to simply affirm this case, because the interveners were not, at the time of trial, entitled to a present judgment of lien and foreclosure; this in our judgment should not be done in the present situation. Should this course be followed, and then, with the lapse of a short period of time, the title become perfect by the failure of the parties constructively summoned to come into the case and overturn it, these interveners would then have to start over again and try out again the involved questions of fact as to the accounting, and be embarassed with the question of just how far the decision of this court had concluded them. Such a result would not be to the interest of any of the parties. The title to the land ought to be set at rest and the parties allowed to have whatever they are entitled to as speedily as possible.

And equity, looking beyond the mere form of things to their substance, has power to decree such relief to the parties as appears just and right and as best calculated to protect their rights under the situation presented. *Varner v. Rice,* 44 Ark. 251; *Texas v. Hardenberg,* 10 Wall. (U. S.) 89, 19 L. Ed. 839.

The judgment in this case was rendered December 31, 1910; unless the same is opened up by the holders of the Graves claim of title in a few months, it will cease to be longer any menace to or cloud on the title of Hoff; and, in such event, he should, at the expiration of such time, pay interveners the amount he owes them as found by the referee. And in such event, having had the possession of the land with its revenues, lawful interest should be added to the amount found due from the date of the decree in the trial court. Should the case be opened up and the Graves title prevail, Hoff could not be made to pay interveners anything. Or, in case it was opened up and the Graves title again defeated, it might be that Hoff would be entitled to credit on the amount due to interveners for such expenditures in defending the title as the law would permit to be charged against them.

Therefore, this being purely an equitable proceeding, we

feel that, in the interest of all the parties, the case should be affirmed, save as to the action⁰ of the court in dismissing interveners' petition; that, as to this, his action be set aside; that the cause be remanded to stand open as to interveners and Hoff; and that, as to them, at the proper time final decree be entered in accordance with the views above stated.

This results in affirming the judgment as modified, with directions.

By the Court: It is so ordered.